*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PK.

KM,

UNPUBLISHED
July 28, 2022

Petitioner-Appellee,

v

No. 358363
Gladwin Circuit Court
Family Division

PK,

LC No. 17-009280-PH

Respondent-Appellant.

Before: MARKEY, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order holding him in criminal contempt of court for violating a nondomestic personal protection order (PPO) issued under MCL 600.2950a. The court sentenced respondent to 93 days in jail. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In November 2017, petitioner filed a petition for an ex parte nondomestic PPO against respondent, her neighbor. Petitioner alleged that respondent threatened her life on multiple occasions, pulled a knife on her and her husband, walked past her house yelling obscenities, told her four-year-old daughter that petitioner was a "bitch," and told her daughters that he would kill their mother. The trial court issued an ex parte PPO that prohibited respondent from engaging in stalking activities under MCL 750.411h and MCL 750.411i. Respondent was specifically enjoined from following petitioner, appearing within sight of petitioner, appearing at petitioner's workplace or residence, approaching or confronting petitioner in a public place or on private property, and entering onto petitioner's property.

Respondent moved to terminate the PPO, asserting that it contained "fabricated accusations" against him. Petitioner testified in support of the allegations in the petition.

-1-

Petitioner's neighbor testified that he saw respondent pull a knife on petitioner and threaten to kill petitioner and her family. Respondent testified that he walked his dog past petitioner's house, that petitioner's own dog was "violent," and that respondent told petitioner that he would defend himself if her dog got loose. He denied threatening anyone. The trial court denied respondent's motion, and the PPO remained in effect.

The PPO was extended twice, the second one lasting until June 1, 2030. During trial court proceedings, respondent was held in criminal contempt for violating the PPO three separate times. The first violation occurred in 2018 when respondent entered petitioner's front yard while petitioner and her husband were outside. Respondent told petitioner's husband, "[C]ome down to my house, I'll teach you a thing or two." Petitioner's surveillance camera captured this incident on video. The trial court found beyond a reasonable doubt that respondent had violated the PPO and sentenced him to 90 days in jail. In July 2021, respondent was again held in criminal contempt of court for violating the PPO by going to petitioner's work place, a local store at which she was a cashier, and purchasing several items from her. Respondent was sentenced to 45 days in jail.

Relevant to this appeal, respondent was again held in criminal contempt of court in August 2021 for a third violation of the PPO. Petitioner moved to show cause alleging that respondent had yelled at her and others and approached her in the courthouse parking lot following the July 2021 hearing on respondent's second PPO violation. Petitioner alleged that respondent started "screaming and hollering and heading towards" her and the others in the parking lot. Respondent said, "Why are you talking to them? I need my phone. You don't need to be talking to them people." One witness told respondent that "this is not the place to be doing this," to which respondent replied that they were all "liars" and "bad people" and to "shut the f**k up." Petitioner and one witness testified that respondent was looking at and speaking to them when he made these statements. Respondent testified that he was in the parking lot and asked another witness why she was speaking with the other people. Respondent claimed that he did not see petitioner in that group of people because he was blind in his right eye, was severely visually impaired in his left eye, and was not wearing his corrective lenses at the time. The trial court viewed video footage of the incident that was captured on a courthouse security camera.

Ruling from the bench in regard to the alleged July 2021 PPO violation, the trial court found that the parties were in the courthouse parking lot, that respondent walked toward petitioner, that respondent's words were directed at petitioner, and that respondent looked at petitioner while speaking. The trial court determined that respondent "directed a verbal assault against [petitioner]," which "definitely" violated the PPO because respondent's actions were "deliberate . . . [and] willful[.]" The trial court found beyond a reasonable doubt that respondent had violated the PPO. The court sentenced respondent to a term of 93 days in jail, to be served concurrently with the sentence he was already serving for the second criminal contempt conviction.

## II. ANALYSIS

### A. CRIMINAL CONTEMPT – SUFFICIENCY OF THE EVIDENCE

Respondent argues that there was insufficient evidence to establish beyond a reasonable doubt that he violated the PPO. We disagree.

If a PPO is violated, a petitioner may file a motion to have the respondent found in contempt of court. MCR 3.708(B)(1). In a criminal contempt proceeding "[t]he petitioner or the prosecuting attorney has the burden of proving the respondent's guilt of criminal contempt beyond a reasonable doubt . . . ." MCR 3.708(H)(3). If found guilty of criminal contempt, a respondent "must be imprisoned for not more than 93 days and may be fined not more than $500.00." MCL 600.2950a(23). In *In re JCB*, 336 Mich App 736, 747-748; 971 NW2d 705 (2021), this Court, in the context of a nondomestic PPO violation, recited the principles applicable to criminal contempt proceedings and appellate review of a court's associated findings:

> Under MCL 600.2950a(23), a person who fails to comply with a PPO is subject to the criminal-contempt powers of the court. The rules of evidence apply to criminal-contempt proceedings . . . . We review a trial court's decision to hold a party in contempt for an abuse of discretion. The nature of the contempt order and whether the contempt statute permitted the sanctions imposed are questions of law that are reviewed de novo. When examining the sufficiency of the evidence to support a criminal-contempt finding following a bench trial, this Court views the evidence presented in a light most favorable to the prosecution to determine if the elements of the crime were proven beyond a reasonable doubt. Furthermore, the trial court's factual findings in a contempt proceeding are reviewed for clear error, and we must affirm if there is competent evidence to support them. We do not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings. Circumstantial evidence and the reasonable inferences arising from that evidence can constitute satisfactory proof of the elements. [Citations omitted.]

Under MCL 600.2950a(1), "an individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin an individual from engaging in conduct that is prohibited under . . . MCL 750.411h, 750.411i, and 750.411s." And "[a] court shall not grant relief under this subsection unless the petition alleges facts that constitute stalking as defined in . . . . MCL 750.411h, 750.411i, and 750.411s." MCL 600.2950a(1).[1] In this case, a PPO was

---

[1] MCL 750.411h(1)(d) and MCL 750.411i(1)(e) define "stalking" as

> a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

"Course of conduct" is defined as "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a); MCL 750.411i(1)(a). "Harassment" is defined as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual

issued, and respondent's motion to terminate the PPO was denied. The PPO remained in effect and was valid and enforceable when respondent was accused of violating the PPO in the courthouse parking lot in July 2021. Respondent is not challenging the validity and enforceability of the PPO; therefore, an underlying stalking determination was effectively in place. A "respondent cannot relitigate the validity of the PPO in his challenge to the criminal contempt." *In re JCB*, 336 Mich App at 750.

The *In re JCB* panel rejected a respondent's argument "that to present sufficient evidence to support criminal contempt premised on a violation of the PPO, a petitioner must demonstrate *again* to the court a course of conduct and harassment causing emotional distress." *Id.* This Court observed that "[c]ontrary to respondent's assertion, petitioner was not required to demonstrate anew the requirements necessary to obtain a PPO." *Id.* at 750-751. The Court explained that for purposes of adjudicating a contempt claim, a trial court simply needs to determine whether a party engaged in prohibited conduct under a PPO. *Id.* at 751-752. The *In re JCB* panel further stated:

> [The respondent's] conduct violated the court's PPO because it fell within the prohibition against "approaching or confronting the petitioner in a public place or on private property." The issuance of the PPO plainly apprised respondent that if he committed a listed prohibited act, he was subject to immediate arrest and civil and criminal contempt. Respondent's contention that petitioner had to demonstrate a pattern of action before seeking to hold respondent in criminal contempt is not supported by the language of the order. [*Id.* at 752.]

In this case, respondent argues that there was insufficient evidence to establish that he engaged in stalking, i.e., a willful course of conduct that involved repeated or continuing harassment that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually caused petitioner to feel terrorized, frightened, intimidated, threatened, harassed, molested, or to otherwise suffer emotional distress. See MCL 750.411h(1)(d); MCL 750.411i(1)(e). As held by this Court in *In re JCB*, with respect to an alleged

---

to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411h(1)(c); MCL 750.411i(1)(d). "Emotional distress" is defined as "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." MCL 750.411h(1)(b); MCL 750.411i(1)(c). "Unconsented contact" is defined as "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411h(1)(e); MCL 750.411i(1)(f). Examples of unconsented contact include "[f]ollowing or appearing within the sight of that individual," "[a]pproaching or confronting that individual in a public place or on private property," "[a]ppearing at that individual's workplace or residence," and "[e]ntering onto or remaining on property owned, leased, or occupied by that individual." MCL 750.411h(1)(e)(*i*)-(*iv*); MCL 750.411i(1)(f)(*i*)-(*iv*). "Victim" is defined as "an individual who is the target of a willful course of conduct involving repeated or continuing harassment." MCL 750.411h(1)(f); MCL 750.411i(1)(g).

PPO *violation*, as opposed to seeking a PPO in the first place, it is not necessary to reestablish all the elements of stalking. Here, the PPO prohibited respondent from "following or appearing within sight of the petitioner" and from "approaching or confronting the petitioner in a public place or on private property." There was an abundance of evidence proving beyond a reasonable doubt that respondent violated these two specific prohibitions. Indeed, respondent does not argue otherwise, instead focusing on a misplaced and misguided assertion that stalking had to be proven all over again. We conclude that when viewing the evidence in a light most favorable to petitioner, there was more than sufficient evidence supporting the trial court's finding beyond a reasonable doubt that respondent committed criminal contempt of court.

## B. THE TRIAL COURT'S FINDINGS

Respondent argues that the trial court failed to make specific findings of fact and law, and instead it simply made an inadequate generalized statement that respondent had violated the PPO. This argument is not supported by the record. MCR 3.708(H)(4) requires a trial court to, on the record or in a written opinion, "find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment." "The requirements of MCR 3.708(H)(4) are also addressed in MCR 2.517[,] [and] MCR 2.517 is satisfied when it appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation." *In re JCB*, 336 Mich App at 753 (quotation marks and citation omitted).

As reflected in our earlier discussion of the trial court's ruling, the record demonstrated that the court made specific findings of fact and law when ruling from the bench, thereby satisfying MCR 3.708(H)(4). The findings, both factual and legal, revealed that the trial court was aware of the issues and correctly applied the law. Further explanation by the trial court is not necessary to facilitate appellate review.[2]

## C. CUMULATIVE EFFECT

Finally, respondent argues that the cumulative effect of the errors deprived him of his federal and state constitutional due-process rights. Because there were no errors, there can be no cumulative effect of errors requiring reversal. See *In re JCB*, 336 Mich App at 755.

We affirm.

/s/ Jane E. Markey
/s/ Mark T. Boonstra
/s/ Michael J. Riordan

---

[2] Embedded in the argument regarding the adequacy and specificity of the trial court's findings is a contention by respondent that the record did not support the court's factual findings. We disagree. There was competent evidence to support the court's factual findings, and the findings quite clearly did not amount to clear error. *In re JCB*, 336 Mich App at 747-748